UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE M. FLORES GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 1850 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| RESTAURANT ONE LIMITED PARTNERSHIP d/b/a | ) | |
| Spiaggia Restaurant and Café, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose M. Flores Gomez brought this action against his employer, Resaturant One Limited Partnership ("Spiaggia"), alleging race discrimination retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The amended complaint claims that Flores (1) was subjected to race discrimination and (2) was fired in retaliation for complaining about race discrimination and for participating in a factfinding investigation concerning a discrimination lawsuit brought by another Spiaggia employee. Spiaggia has moved for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is granted on the race discrimination claim, which Flores declines to defend. Summary judgment is denied as to the retaliation claim.

**Background**

The facts are stated as favorably to Flores as the record and Local Rule 56.1 permit. Flores worked as a formaggaio (cheese steward) at Spiaggia. On July 11, 2008, he served about 25-30 ounces of wine pours to guests at a particular table. Flores told the table's server not to charge for the wine; Flores looked for but could not find a manager to provide authorization for

0

the free pours.  Chad Bertelsman, a senior dining room manager, was informed of the unauthorized pours, reviewed Flores's disciplinary history, and then emailed Jason Goldsmith, Spiaggia's general manager, about the incident.  The email recommended that Flores receive at least a two-week suspension, but indicated that Bertelsman would not oppose termination: "What course of action do you think is appropriate?  I think at least a 2 week suspension.  I would not be opposed to termination."  Doc. 67-6 at 38.  Goldsmith met with other supervisors, reviewed Flores's file, and decided to terminate Flores.  In so doing, Goldsmith relied on the information he received from Bertelsman.  Doc. 75 at ¶ 34.  The termination occurred in July 2008.

Flores contends that Bertelsman's email, which commenced the chain of events that led to his termination, was an act of retaliation for two actions Flores took at Spiaggia.  The first occurred in January 2008, when Flores participated in an investigation by Spiaggia regarding a race discrimination lawsuit suit filed by Kathleen Taylor, a former African-American employee.  Taylor was terminated after a customer complained to Bertelsman that Taylor had accused the customer of stealing wine.  Flores met with Spiaggia's counsel for almost an hour on January 8, 2008; during the interview, Flores told counsel that Bertelsman and Taylor did not like each other, that Bertelsman had a temper, that Bertelsman treated Taylor in an unfair, rude, and condescending manner, and that Flores found Bertelsman to be "unfair and discriminatory at times in his treatment of employees."  Doc. 72 at ¶ 59.  After the interview concluded, Bertelsman immediately approached Flores and asked him questions about what he said to the attorney and why the meeting took so long.  Doc. 75 at ¶¶ 8-9.  Flores tried to evade the questions, saying that he told the attorney about the incident concerning the guest's complaint about Taylor.  Doc. 72 at ¶ 60.  Flores then noticed a change in Bertelsman's behavior toward

him; while Bertelsman previously had been friendly towards Flores and spoke to him nicely, Bertelsman became rude, condescending, critical, and cold. Doc. 75 at ¶ 11. The Taylor case was settled in March 2008, about two months after Spiaggia's counsel interviewed Flores; Bertelsman was informed of the settlement. *Id*. at ¶¶ 12-13.

The second action occurred on June 8, 2008, when Flores complained to Bertelsman that another employee made racially insensitive comments about African Americans. Bertelsman terminated that employee on June 14, 2008.

## Discussion

Title VII prohibits an employer from discriminating against an employee who "opposed any practice" prohibited by Title VII or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). Title VII's "antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms … by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). Section 1981 "encompasses retaliation claims." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009); *see also CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2009). The same standards govern retaliation claims under both provisions. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630-31 (7th Cir. 2011); *Stephens*, 569 F.3d at 786.

Flores may forestall summary judgment on his retaliation claims through the direct or indirect methods of proof. *See Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687-88 (7th Cir. 2010). Flores pursues only the direct

method. Doc. 71 at 4. Under that method, Flores "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Turner*, 595 F.3d at 687 (internal quotation marks omitted); *see also Coleman*, 667 F.3d at 859. Spiaggia concedes that there was an adverse employment action, *see Lapka v. Chertoff*, 517 F.3d 974, 985-86 (7th Cir. 2008) (termination is a materially adverse action sufficient to support a retaliation claim), but disputes the other two elements, which are considered in turn.

### A. Statutorily Protected Activity

As noted above, Flores' first allegedly protected activity was speaking with the Spiaggia lawyer who was investigating Taylor's race discrimination suit. Participating in a "purely internal investigation"—meaning an investigation conducted where no formal charge of discrimination has been made to "an official body authorized to enforce Title VII," such as the EEOC or a court—is not a statutorily protected activity. *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 747 (7th Cir. 2010); *see also Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 49 (2d Cir. 2012). The Seventh Circuit has taken "no position" on the question posed here, which is "whether participation in an internal investigation begun *after* a charge is filed with the EEOC should be treated as participation in the official investigation." *Hatmaker*, 619 F.3d at 747. The Sixth and Eleventh Circuits have answered that question in the affirmative. *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003) ("we hold that Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination where that investigation occurs pursuant to a pending EEOC charge"); *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999) ("we recognize that, at least where an employer conducts its investigation in response to a notice of charge of discrimination, and is

thus aware that the evidence gathered in that inquiry will be considered by the EEOC as part of its investigation, the employee's participation is participation 'in any manner' in the EEOC investigation"). The Eighth Circuit noted in dicta its "likely" agreement with the Sixth and Eleventh Circuits. *Gilooly v. Mo. Dep't of Health and Senior Servs.*, 421 F.3d 734, 744 n.4 (8th Cir. 2005).

With no circuits taking the contrary view, and because the Sixth and Eleventh Circuits' decisions appear persuasive, the court concludes that participating in an internal investigation commenced in response to an EEOC charge or Title VII lawsuit is a statutorily protected activity. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576 (7th Cir. 2008) ("we note that creating a circuit split generally requires quite solid justification; we do not lightly conclude that our sister circuits are wrong"). Here, Flores spoke with Spiaggia's lawyer after a race discrimination lawsuit had been filed against Spiaggia. Because this qualifies as a statutorily protected activity, there is no need to address whether Flores' second action, his complaint to Bertelsman about another employee's racially derogatory remark, also qualifies as a protected activity.

### B. Causation

To satisfy the causation element of his retaliation claim, Flores must show that his statutorily protected activity was "a substantial or motivating factor" in Spiaggia's decision to fire him. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011). Causation may be shown by direct evidence, which "entail[s] something akin to an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')." *Coleman*, 667 F.3d at 860; *see also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Causation also may be shown "by presenting a 'convincing mosaic' of circumstantial

evidence that would permit the same inference [of retaliation] without the employer's admission." *Coleman*, 667 F.3d at 860 (some internal quotation marks omitted). Pertinent circumstantial evidence consists of (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of [retaliatory] intent might be drawn," (2) "evidence showing that the employer systematically treated other, similarly situated … employees better," or (3) "evidence that … the employer's justification [for the adverse action] is pretextual." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011) (internal quotation marks omitted); *see also Coleman*, 667 F.3d at 860. "Each type of evidence [direct and circumstantial] is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Coleman*, 667 F.3d at 860. The appropriate focus "is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (internal quotation marks omitted); *see also Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011).

As a preliminary matter, it must be noted that Flores proceeds under the "cat's paw" theory, which holds that "if a supervisor performs an act motivated by [impermissible] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011) (footnote omitted). Flores argues that Bertelsman had a retaliatory motive arising from his desire to punish Flores for complaining about Bertelsman to Spiaggia's lawyer, and that Goldsmith was "the unwitting manager or supervisor

who is persuaded to act based on another's illegal bias." *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011); *see also Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012) ("In employment discrimination law the 'cat's paw' metaphor refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action."). To demonstrate causation under the cat's paw theory, Flores need only show "some direct relation between the injury asserted and the injurious conduct alleged." *Staub*, 131 S. Ct. at 1192.

Here, Bertelsman's email to Goldsmith describing the July 2008 complimentary wine pour incident suggested at least a two-week suspension but also directly raised the possibility of termination ("I would not be opposed to termination"). Goldsmith relied on Bertelsman's email in determining what action to take against Flores. Accordingly, even if Goldsmith exercised some independent judgment in deciding to terminate Flores, it cannot be said that there is no "direct relation" between Flores's termination and Bertelsman's advocacy of disciplinary action, up to and including termination, against Flores. *See id.* at 1192-93 ("An employer's authority to reward, punish, or dismiss is often allocated among multiple agents. The one who makes the ultimate decision does so on the basis of performance assessments by other supervisors."); *Hicks v. Forest Preserve Dist. of Cook Cnty.*, 677 F.3d 781, 790 (7th Cir. 2012) (holding that the "cat's paw" theory applied where the decisionmaker relied upon a disciplinary complaint submitted by a supervisor who bore animus against the plaintiff); *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 755-56 (6th Cir. 2012) (same).

Having established this component of the "cat's paw" theory, Flores still must adduced evidence sufficient for a jury to find that Bertelsman's email to Goldsmith was the causal result of Flores' termination. Spiaggia claims that Bertelsman had no basis to know that Flores had made negative comments about him during the interview with Spiaggia's counsel, in that neither Flores nor the attorney nor anyone else told Bertelsman anything about what Flores told counsel. Doc. 72 at ¶ 60. Flores responds that Bertelsman inferred that Flores spoke unfavorably of Bertelsman. Bertelsman confronted Flores after the interview, and although Flores told Bertelsman that he simply told the attorney about the customer incident that resulted in Taylor's firing, Bertelsman thereafter acted in a rude, cold, and increasingly critical manner with Flores. A jury could infer from the sudden change in Bertelsman's behavior that Bertelsman either inferred or learned from another source that Flores told the attorney that Bertelsman had engaged in discriminatory workplace behavior.

Spiaggia argues that the lengthy interval between the January 2008 interview and Flores' July 2008 termination defeats causation. But the lapse of time between protected activity and an adverse action has never been "dispositive in proving or disproving a causal link" between an employee's participation in a protected activity and a subsequent adverse employment action. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). As the Seventh Circuit has cautioned: "A mechanistically applied time frame would ill serve our obligation to be faithful to the legislative purpose of Title VII. The facts and circumstances of each case necessarily must be evaluated to determine whether an interval is too long to permit a jury to determine rationally that an adverse employment action is linked to an employee's earlier complaint." *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 616 (7th Cir. 2001). Here, there is sufficient evidence in the record—including Bertelsman's concern about what Flores said to counsel, Bertelsman's

knowledge that Spiaggia settled the Taylor case shortly after Flores spoke with counsel, and the change in Bertelsman's attitude towards Flores—to allow a jury to conclude that Bertelsman knew or inferred that Flores had commented unfavorably to Spiaggia's counsel about Bertelsman's workplace behavior, and that Bertelsman thereafter nursed a grudge against Flores and waited for just the right opportunity to retaliate. *See Hicks*, 677 F.3d at 789 ("While close timing between a plaintiff engaging in a protected activity and then suffering an adverse employment action is useful evidence to establish a causal link between the two events, the law does not require there to be close timing where, as here, direct evidence is used to establish causation."); *Coleman*, 667 F.3d at 861 ("Our cases reject any bright-line numeric rule, but when there is corroborating evidence of retaliatory motive, as there is here, an interval of a few weeks or even months may provide probative evidence of the required causal nexus."); *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 485 (7th Cir. 1996) (citing cases for the proposition that retaliation claims can proceed despite a year-long interval between the protected conduct and the retaliation where there were "additional circumstances [that] raised suspicion about the legitimacy of the employer's acts"); *Komal v. Arthur J. Gallagher & Co.*, __ F. Supp. 2d __, 2011 WL 2415725, at *6 (N.D. Ill. June 13, 2011).

Once a plaintiff adduces evidence sufficient to permit a jury to infer a discriminatory motive for an adverse employment action under the direct method, "the defendant's summary judgment motion necessarily must fail." *Silverman*, 637 F.3d at 734 n.3. This is not to say that Flores will prevail at trial. Unlike the court on a summary judgment motion, the jury will have no obligation to resolve all disputed material facts in Flores' favor. The record contains evidence of multiple previous disciplinary infractions by Flores. The jury may believe Bertelsman that he did not know that Flores told Spiaggia's lawyer that Bertelsman engaged in

discriminatory behavior. There are other grounds on which Spiaggia may prevail. The only holding here is that Flores put forth evidence sufficient to prevent this matter from being resolved on summary judgment.

## Conclusion

For the foregoing reasons, Spiaggia's summary judgment motion is granted as to the discrimination claim and denied as to the retaliation claim. This case will proceed to trial on the retaliation claim on October 1, 2012.

June 19, 2012

_____
United States District Judge